GEORGE WALKER and others, trustees,

*v.*

THE MONTCLAIR AND GREENWOOD LAKE RAILWAY COMPANY.

One of a number of bondholders who had entered into an agreement for the purchase of the mortgaged premises at the sale under the execution in the foreclosure proceedings, applied for an order setting aside the sale (the property had been bought by the combination at the sale) on the ground that the purchasing committee of the combination had, contrary to the agreement under which the combination was formed (that is, after the time limited in the agreement for coming in), let in other bondholders; also, that they had stifled competition at the sale by purchasing, after an adjournment of the sale and before the sale took place, for the account of a railroad company which came in subsequently and after the limited time, the bonds of a person who was a determined bidder when the property was first put up for sale.—*Held*, that the objection that other bondholders were

let into participation in the benefits of the combination agreement after the time limited therein, could not, under the circumstances, find favor in equity, and that the alleged stifling of competition was the act of the agents of the petitioner, and it did not appear that it had affected his interest injuriously in any way.

On petition of Charles W. Hassler, for an order setting aside master's sale, &c., &c. Application for order to show cause.

*Mr. J. D. Bedle,* for the motion.

*Mr. Cortlandt Parker, contra.*

THE CHANCELLOR.

The petitioner prays that the sale of the railroad and franchises, &c. of the defendants, by the master, under the writ of *fieri facias* issued upon the decree for foreclosure and sale in this cause, may be set aside and a resale ordered; that the receiver may be directed to retain possession of the railroad, &c., until the further order of this court; that the master may be directed to file a report of the sale, with a statement of the bonds received by him on account of the purchase-money, and from whom they were received, and that this court will ascertain and determine what persons deposited their bonds and paid their assessments according to the terms of the agreement of bondholders, made after the issuing of the *fieri facias,* for the purchase of the railroad and its franchises, &c.

The agreement provided for the purchase of the road in behalf of such of the holders of the first and second mortgage bonds as should subscribe to it and deposit their bonds, and pay an assessment of five per cent. on the principal thereof, on or before September 10th, 1878. The object of the assessment was to raise a fund for the payment of liens (wages of employes, &c.) paramount to the mortgages, and to pay the percentage of the purchase-money to

Walker *v.* Montclair & Greenwood Lake Railway Co.

which bondholders not coming in under the agreement would be entitled, &c., &c.

The petitioner is one of those who subscribed to that agreement. The ground of his complaint is, not that the proceedings of the master in the conduct of the sale were not fair and lawful, but that, by reason of the action of the purchasing committee, appointed under the agreement, in admitting to participation in the benefits of the purchase, bondholders who did not come in on or before the time limited for the purpose in the agreement (the 10th of September, 1878), he has not derived from the arrangement the advantage which he reasonably expected to reap. He also alleges that the committee stifled competition at the sale by the purchasing, between the 28th of September (when the property was put up for sale), and the 5th of October (to which day the sale was adjourned) by one of their number, for the account of the New York, Lake Erie and Western Railroad Company, of the bonds of Arthur W. Benson, a bidder, who had expressed a determination to bid up the property to a very considerable amount, and who, on the 28th of September, bid for it $156,000, or some such sum, and was willing to give much more, and protested against the adjournment of the sale. It appears that the bonds held by Mr. Benson were, after the adjournment, purchased from him, and the purchasers thereof came into the arrangement for purchase of the mortgaged premises under the agreement. The purchasing committee were, by the terms of the agreement, to buy the property unless, in their judgment, the sum bid by other parties should exceed its fair value, in which case they were authorized to allow such other parties to purchase.

It is not alleged that Mr. Benson or any one else intended to bid up to the amount of the fair value of the property. It, therefore, does not appear but that the purchasing committee would have been bound, in the discharge of their duty, to buy in the property. If compelled to buy it, it is obvious that the higher the price the greater would have

been the amount of money to be paid by the combination to those who did not come in. Unless, therefore, Mr. Benson or some one else proposed to bid up the property to its value, it was manifestly to the interest of the petitioner and his associates in the combination that competition should be prevented. It was to their interest that the property should be bought at as low a price as practicable. By the purchase of the bonds of Mr. Benson, by those who were willing to come into the combination, not only was competition silenced, but an accession to the funds of the combination by means of the assessment of those bonds was obtained in place of the payment of a dividend thereon of the price at which the combination would buy the property.

It does not appear, therefore, to say the very least of it, that any injury was done to the combination by the arrangement.

The petition also alleges that the purchasing committee not only sold the bonds held by themselves to the New York, Lake Erie and Western Railroad Company, but bought others for that company, so that it obtained the majority of the whole issue of first mortgage bonds, and that the purchasing committee admitted that company, in respect of those bonds, to a participation in the benefits of the agreement, although it did not, nor did those from whom the bonds held by it were purchased, come into the arrangement on or before the 10th of September; and the petitioner's counsel urges that the admission of that company or its representatives, as the holders of the bonds owned by it, to the benefits of the combination, was in derogation of the rights of those who came in on or before the 10th of September, because the agreement expressly provided that no bondholder should have the right to share in the purchase to be made under the agreement, who should not sign his assent and make payment of his assessment before the 10th of September. It is enough to say, on that head, that the validity of the sale obviously cannot be affected by that con-

sideration, nor will that consideration avail to set aside the sale.

It appears by the petition, it may be remarked, that the petitioner was aware, on the 30th of October, more than a month before the filing of the petition, that it was designed to admit to participation bondholders who had come in after the 10th of September. He might then have taken steps with a view to vindicating his rights under the agreement. He did not do so. This proceeding cannot be made available for that purpose. It will not be out of place to remark that, while such agreements may be regarded as having the merit of protecting the bondholders, by preventing a sacrifice of the property, yet, in most cases, they operate to the advantage of rich bondholders, and to the exclusion, practically, of the poorer and helpless ones from the benefit of the mortgaged premises. Therefore, where they exist, the extension of their advantages to all the bondholders on equitable terms could not be looked upon by a court of equity with disfavor, but, on the contrary, would be regarded, at least, with complacency. And in a case where those advantages have been extended to bondholders who have come in after the time limited in the agreement, but who have otherwise complied with its terms, an application to exclude them from participation would lack the essential element of equity.

And, again, when those who have entered into such an agreement come to this court to complain that competition at the sale was prevented, if it appears that the act complained of was that of their own agent, acting in their interest, that fact cannot be left out of sight, nor can the court fail to remember that the effect of such agreements is not to excite or encourage competition, but just the reverse.

But, further, the petitioner has, by his unreasonable inaction, forfeited any claim which he might have had to relief in reference to the sale. The sale took place on the 5th of October. The master's deed for the property was delivered on the 9th of that month. The assessments have been paid

in under the agreement, and have, to a great extent, been paid out in satisfaction of paramount claims for the wages of employes, &c.

It appears from the petition that the petitioner was aware of the matters which are the grounds of this application, on the 30th of October. He permitted more than a month to elapse before making this application. In the meantime the new corporation has been created and the property has been conveyed to it. It was conveyed on the 5th of November. It is but reasonable to presume that rights and interests and equities have been acquired, and have arisen in the premises, since the 30th of October, which would be prejudiced, if not destroyed, by setting aside the sale.

The petition will be dismissed, with costs.